Good afternoon, this is Juan Monteverde for the appellant. Would it be now the time that you want me to start or would you like a police to introduce himself first? It's great if you go ahead and start, thank you. Thank you and I'll try to reserve two minutes if I may. May I please the court, this case is pretty straightforward and it boils down to whether the same projections that a sales process and that bidders use to make a bid in acquiring a company can be considered immaterial as a matter of law. Plaintiff has identified there were two sets of projection here not disclosed, the June and August projections and those same projections were actually used during the sales process. Let me make sure I understand the facts here. Those projections did not result in the kinds of bids that the company wanted and after trying with many companies eventually they were down to two and then they were just down to one and so when they issued their final fairness opinion they gave us a projection, a projection that was lower because it reflected what the marketplace had shown about what the company was worth. What was wrong with that? That's actually inaccurate because the buyer here, Malincroft, never received the November projections, made offers based on the June and August projections. The fact that they lowered their bids, that's a part of a sales process, it's okay to do that but management is not supposed to lower projections because of feedback and the truth of the matter is the reasons defendants offer are not valid. We have challenged them with specific facts. They had no issues between June and November to lower projections. All the negative issues they had with their product was known to the market in January before they conducted a sales process. So counsel, your view is that going from 34 potential bidders to two and then one in large part based upon the results of the phase two that that's not a reason to lower projections that you have projections that you think are going to result in huge offers from many people they end up resulting in one offer that's lower than the offer initially made in large part because of the likely need for another phase two that's not a legitimate reason to to lower projections. That's not what happened. First of all in a sales process you're always going to end up with one bidder that's an auction process. Second of all the the issues that their defendants raised which was safety concerns as well as mixed views of the market opportunities that's not reflected in their 10 cues and we're relying on facts that support the opposite view. In fact in the Q1 for 2017 they said that their primary endpoint revealed patients improve faster. That's positive and the court what the court did relied on the facts presented by defendants and interpreted in their favor. We had no discovery here. This was a motion to dismiss and the court had on language on the 10 cue that says well the ability to continue as a growing concern within 12 months following the date of the filing of this firm 10 cue is an issue. That same language was in all three 10 cues. If within 12 months was the issue on Q1 and things are getting worse you wouldn't expect the same sentence on Q3. Also the court took the liberty to interpret this thing of... So are you saying that they did not need investment to continue as a company? Oh but that's a normal thing for a pharmaceutical. Yes they need investments but doesn't mean that you lower your projections because the value the bidders are telling you and the court interpret the 10 cue when the when the 10 cue says will depend heavily on the value investors see. Investors the court interpreted to mean the bidders. It's not that it's shareholders. We know that because on Q3 they announced the transaction and they have the same order plate language. We can lead to the conclusion they're talking about shareholders. The problem here is the court took the liberty. The stock price at the time of the merger was lower than the price they got so if we're looking at what shareholders think how does that help you? Well a premium doesn't mean you're getting fair consideration in the face of facts that we put in our pleading that there were analysts saying the company was worth double that price at that same time. But apparently the investors who are the shareholders didn't agree. Why you say that? Well why was the stock price what it was? Well the investors I don't decide what the stock trades on the open market today I wish I could that's not how it works. Right investors do. Right but you have analysts following it and if they're saying this has a potential for greater value that is something we can use to support economic loss. Again this But counsel you you allege that analysts estimated the target price to be between 267 and 450 a share. Yes. And for 35 potential bidders and none bid anywhere close to that as an upfront number. Correct? Yes but there's reasons for that. It's an option. So explain to me given the facts which you've just agreed are correct. What was it that caused your clients a loss? What was the loss causation? What's the theory plausibly that they should and would have made more money absent these what you say are the false or misleading projections. What was the path to your clients doing better economically so that they plausibly suffered a loss here? Right so one you have analysts saying it's a higher price. I got that. I got that. Sorry. Two you had Malinkroth essentially knowing how the process is developing and getting lower projections eventually Malinkroth figured it out. We're the only game in town and we're gonna squeeze. That's what happened because you get a sense what management is doing and they were lowering projections without a need for it. What are the projections have to do with what Malinkroth offered? If there were like ten other bidders but there but there weren't. So how was it that you're that the projections which you say are false or misleading caused the only bidder to offer what you think apparently was a lowball offer. How are those two things plausibly connected because presumably they made their offer based on their due diligence like the other 34. So how does that plausibly suggest that your clients would have done better absent these projections even if we were to agree with you that they were improper. So let's assume it's true there's the only one bidder and that's what happened and the company sells just to that one bidder. Well perhaps it's not the right time to sell. I mean that's also something that we have to recognize and the issue here is not what would have happened with other bidders is why did Alcera not disclose those projections. So maybe you're right that this wasn't the right time to sell but how does that relate to in terms of loss causation how is that loss caused by the projections. How does the projections result in the company selling at a time when it when it shouldn't have. You're saying that even though this was the only bidder that you've plausibly suggested that that if the projections had been higher that there wouldn't have been enough people to have approved the merger. No no the issue here is they need to disclose projections that they're using that's our position and your question is what what is the what is the loss and the loss we identified and I think Lane does a good job at 1231 explained the four steps. First you got to identify the misrepresentation. We did that. Then we have to allege that based on that misrepresentation which is not disclosing the higher projections shareholders thought they were getting a fair price. Third you have to show there were other appraisals out there. We have identified that in our complaint of higher higher values and due to the submissions shareholders were not informed. That's my job today and I've done that job and I did it well and I have a specific facts and we challenged the the statements to lower projections the court disregarded it. The court at ER 222 essentially says I'm not going to five reasons and we only challenged three. Well it doesn't matter that's a credibility issue for trial not an issue at a motion to dismiss. The court took liberties to not view the facts in the light most favorable and the fact that you only have one bidder at the end that's how every auction process is going to work. So in some cases there's evidence that the board has a conflict of interest or something. Do you have any reason to think that this board had had any interest in undervaluing the company? I have litigated both types of cases I understand your honor but you don't need to have a conflict and you don't need to have because there's no state of mind here it's a negligence case and whatever the board did during the sales process it's irrelevant frankly. All that matters is what they did in relation to the disclosures in the recommendation statement. That's where you need to view the negligent act and negligence lies when you omit a material fact and that's the Wilson case from the Second Circuit that said it we also in our supplemental letter of March 16th I think it is we put forth the Willis Towers case. So I have a question about that because I am familiar with Second Circuit precedent in this area but to be frank doesn't that mean that every time there's a material misstatement or in this case of material omission is really what you're claiming is it's strict liability it's not negligence it's a strict liability. No you need you need economic law so you need to also have other ways to show that there were higher there was higher value and also every case you could argue strict liability if you meet the element of that case whether it's an omission it must be material and you must be able to claim damages and when you don't disclose higher projections I think it's easy to do that and there's ample authority of that Azar which is from a sister state but also within the Ninth Circuit had the same facts as this case identical almost in there there were three sets of projections and they didn't disclose the first one and here we pledge facts this is not conclusory allegations we said why we didn't think those reasons made sense they talked for example about the PKD PD study that concluded in March 2017 you're doing projections in June 2017 how can you go back to to use that as a reason the idea again that you're lowering projections because what other people tell you outside your company makes no sense then why do shareholders pay millions of dollars in compensation to management to run a company that is not what they're supposed to do and by the way why not disclose the information we're not fighting about anything other they should have shown that information to shareholders there's no argument that this was immaterial as a matter of law when you plead facts doesn't mean every time you need to disclose every iteration of projections and there is no looking defense here for defendants because it's a tender offer so they don't even get to say that Oracle and they rely heavily in Oracle that has no basis in this case I know I'm coming to my two-minute mark so unless there's any other question I would reserve my remaining time thank you we can hear from the other side thank you may it please the court Brian Matsui for defendants plaintiffs complaint lacks the essential requirements of a section 14e claim and multiple independent grounds support the district courts decision first there's no materially misleading misstatement or omission second plaintiff does not plausibly allege any facts to show that the individual defendants acted negligently when making the challenge statement he instead relies on mere conclusory allegations that the individual defendants as a group were quote negligent and third plaintiffs seeks to hold defendants liable without pleading loss causation economic loss requires a plausible explanation of how he could have gotten more money for his shares which he simply can't do any one of these grounds each thoroughly degressed by the district court can leave that should leave this court to affirm now I'd like to start with plaintiffs omissions claim that the omission of the June and August projections made the November projections materially misleading plaintiffs not claiming that the November projections are materially false or untrue he abandoned that in his blue brief on pages 10 and 11 so to state an omissions claim he has to show that the omitted projections were both material and that they made the November projections misleading and I think the easiest place to start here is with the leading requirement because my friends focuses a lot on these projections being material but materiality isn't enough he also has to show that the omission of those projections made the November projection misleading and that's a difficult task as this court's Brody decision said the omission must affirmatively create an impression of the state of affairs that differs in a that actually exists and in the Oracle case this court noted that companies generate numerous estimates internally and they may reveal the projection they think best well withholding others as long as the projection revealed had a reasonable basis and for an omission you would need facts tending to seriously undermine its accuracy and what that gets to is there's no completeness requirement in this circuit or in the Supreme Court's you know Omnicare case just because something might be material we don't think it is here doesn't mean that that projection has to be disclosed the critical question is whether or not it makes the November projection misleading and there simply are no facts alleged anywhere in the complaint that would indicate that the November projection is misleading by the omission of the June and August projections the existence of those projections was disclosed plaintiffs complaint alleges that and it's oh it's alleged and it's shown in the recommendation statement that the June projection at least was reduced based upon feedback from other part from potential partners and that's significant here when you're talking about a company like Oh Sarah that has no product that has only one product in development in clinical trials that just failed needs to go through regulatory approval never has had any sort of profit given that that type of projection which is an opinion statement you really would need to show that there's no reasonable basis for it in order to show that it's misleading now the plaintiff's other argument with respect to the supplemental disclosure that also fails for very similar reasons where he's trying to say that three of the five reasons in the supplemental disclosure were untrue you need to actually look at what the supplemental disclosure says and it makes clear that the challenge statement there was an expansion on the feedback that potential partners provided and there's nothing untrue about that statement the complaint itself alleges that Oh Sarah received this feedback from potential partners that's at ER 235 paragraph 7 and at ER 248 paragraph 63 so there's nothing there that would suggest that an untrue statement given the fact that plaintiff himself alleges that first argument that you're making about the lack of any misleading omission or any misleading statements does that argument really rise and fall with your loss causation argument or is there a way I know you only need to win on one issue is there a way for one of those to succeed and the other to fail or they are they really sort of boiling down to the same thing these are all independent grounds because for the loss causation argument there's just simply no economic loss that plaintiff has alleged at all he has is a legal conclusion that that of Sarah's true value was greater than the the merger consideration and regardless of whether or not you would look at a particularity requirement or it's just a legal conclusion because plaintiff would need to plead actual facts demonstrating economic loss that he could have actually gotten more for his shares and I think that when you look at this transaction there's just no plausible way in which plaintiff could have gotten more for this transaction given the fact that there were 34 companies interested in January that went down to 15 then to 7 then to 2 then to 1 it wasn't a situation where it was an it was a situation where various companies conducted due diligence and during the course of that due diligence as is stated in the recommendation statement and as legend the complaint these companies dropped out because of concern they had with the clinical data that they were reviewing it's so it seemed like he was saying that the shareholders should have just not which really had a higher value and I guess that's why I was asking whether they collapse the same thing because the materiality would relate to whether there really was a higher value that had been more accurately estimated earlier and the last causation I guess would be was it really a company that had higher value as an independent concern I don't what's actually the two points there the first is that even if the June and August projections were material they still would only support cause of action if they made the November projection itself misleading and he doesn't have any allegations to support that but even if the June and August projections were material that would just mean that that's information that would change the total mix of information and the shareholders might find it useful but that doesn't mean that there would be lost causation by the or any economic loss suffered by the plaintiff here I think that the Supreme Court's Dura case is instructive because in in that case the Supreme Court held that you don't have lost causation because you allege that you pay too much for a stock that there's an inflated stock value and that's sort of similar here where plaintiff is effectively saying that the stock price was deflated and in both situations it's too speculative and that's part of the thrust of Dura that you unless you can show that there actually was a way to have traded the stock and lost money then you don't have lost causation and the same thing is true here unless he can actually show that there was another transaction that could have been entered into he can't show lost causation now the Brody case for example is an example of how you potentially could have lost causation where an investor sold the shares before a tender offer before the tender offer price and then said had the company not omitted information they would have known there was going to be a tender offer they wouldn't have sold the shares and that's a situation where there's the potential for a loss causation or if you had a situation where there was a company where people were truly interested in it and there were two offers at the end and management chose one offer over the other and it turns out the other offer was actually better you know you could see that situation where there might be conflicted director insiders that there might be financial benefits and in that type of situation there could be lost causation if you said the other transaction was better but I think that if we listen to my friends argument a lot of what he's doing is criticizing the business judgment of the company and the executives in the company that they should have just held on to the company they should have accepted a better price that they shouldn't have lowered projections based upon feedback that's not a section 14 e claim that's just a challenge the business judgment of the laws are designed to to provide a remedy for let me let me interrupt to ask you you've covered if you will the first and the third of the three points you mentioned the second of your points was that there's a failure to allege adequately allege negligence but what about those cases that say in this material misstatement and negligence follows automatically so I don't think that that's right because that would impose strict liability upon the defendants and this courts Varjavidian's decision indicates that negligence is required and so plaintiffs argument would effectively overrule Varjavidian the courts for Varjavidian's opinion and the securities laws do have strict liability statutes section 11 for example is a strict liability statute and the Supreme Court in Omnicare reiterated that that all it requires is a violation as long as the plaintiff alleges that there has been a material misstatement or omission in a registration statement then that violation is enough it doesn't matter that the speaker might have been made a mistake there is no negligence requirement there and it can be shown with duty and breach right and damages so I'm just wondering what kind of evidence you think would show negligence I know you don't think there is evidence of negligence in this case but just so I can understand the difference between the circuits that have said you need more evidence of that or more allegations of negligence the ones that don't what do you think it would look like to have more allegations of negligence well I think the district court really hit the nail on the head here and that's at ER 27 when the court said there are no facts alleging defendants fail to review certain materials or neglecting their responsibilities or design and oversaw a flaw review flawed review process those are the types of allegations that would that could plausibly show negligence on the part of defendants and that's what is entirely missing here because we just have a legal conclusion at ER 260 that the individual defendants were negligent in carrying out their duty and in plaintiff had the opportunity to amend his complaint here and he didn't take the court district court upon on that offer so there just are no allegations that the the plaintiff has to show any sort of negligence in this case I think it's a it's important we cited the u.s. government brief in the case and the u.s. government has taken the position on section 14 e that negligence is required and has compared that to section 11 and strict liability statutes and says that you need some sort of culpability on the behalf of defendant in section 14 e because section 14 e is broader than section 11 that it covers a broader range of statements and for that reason that's why you need a negligence requirement in section 14 e that's why this court you know should not overrule Varjavidian and go do something less than the negligence if there are no further questions then we would ask this court to affirm thank you counsel and there are two minutes left on the clock for rebuttal sure so we're saying is that the board should have disclosed the projections we're not challenging their conduct we're not challenging their judgment that's irrelevant and there is a case on economic laws that comes to mind which is Virginia Bank shares and in Virginia Bank shares a trial the way they prove damages what what were the shares worth at the time that deal closed it's not what they could have got is what they are worth and we would have used the projections that they didn't disclose and to give an example of other ways to seek damages which we allege in our complaint in ER 251 or Sarah rejected an offer from party a in the October time frame a month before entering to the deal with Malincroft to do a licensing agreement that could have also led to more money we don't know that but we've alleged it that they rejected that and we've alleged in 243 through 248 why we think the idea that you change projections based on feedback makes no sense and that's what this case is about about alleging facts that contradict the story defendants are trying to tell and we have factual specificity to have do so and the two cases that come to mind with regards to the projections issue we talked about Oracle and KCG Oracle all it says is internal forecast here they're not internal they were used approved by the board same with KCG we are saying shareholders should have seen those projections and they didn't and it was individual defendants failure to disclose that information and as a board as they are a group they all have the same obligation to review the recommendations statement and of course they did that's required by law and they say in their recommendation statement these are the reasons why the board approves this transaction so of course we have pled that there was a duty and a violation of that duty we believe this case should be reversed and remanded to the lower court thank you thank you both sides for the very helpful arguments the case is submitted and we are adjourned for the week thank you good weekend everyone we really appreciate it no problem thank you and be well and stay safe thank you thank you bye
judges: Friedland, Bennett, Rakoff